UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARLONDA L. TIGNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01229-TAB-RLY |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**I.    Introduction**

Plaintiff Marlonda L. Tigner appeals the Administrative Law Judge's denial of her application for supplemental security income.  Tigner argues:  (1) substantial evidence does not support the ALJ's step-three determination, and (2) the ALJ's step-five determination was erroneous.  For the reasons below, the Court denies Tigner's brief in support of complaint. [Filing No. 29.]

**II.   Background**

Tigner applied for supplemental security income, alleging disability beginning on February 1, 2005.  The claims were denied initially and upon reconsideration.  After the administrative hearing, the ALJ determined Tigner is not disabled.  At step one, the ALJ determined that Tigner has not engaged in substantial gainful activity since her application date. [Filing No. 13-2, at ECF p. 13.]  At step two, the ALJ found that Tigner has the following severe impairments: history of injury to her right leg with residuals, obesity, seizure disorder, history of substance abuse in full remission, and post-traumatic stress disorder.  [*Id*.]  At step three, the ALJ found that Tigner's impairments do not meet or medically equal a listed impairment.  The ALJ

rejected Tigner's alleged seizure frequency reflected in her personal seizure log and her subjective complaints of pain from her right leg swelling. [Filing No. 13-2, at ECF p. 14.]

At step four, the ALJ found that Tigner has the residual functional capacity to perform light work with limitations: Tigner can lift and/or carry 20 pounds occasionally and 10 pounds frequently and she can stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday. [*Id.* at 16.] Tigner cannot climb ladders, ropes, or scaffolds and must avoid dangerous heights. She is limited to simple, repetitive tasks with no forced production or fast-paced work and can occasionally interact with the general public and peers. Tigner does not have past relevant work. At step five, the ALJ found—based on Tigner's age, education, work experience, RFC, and a vocational expert's testimony—that Tigner could perform a significant number of jobs and that she is capable of making adjustments to other work. [*Id.* at 23.] The decision became final when the Appeals Council denied Tigner's request for review. This appeal followed.

### III. Discussion

*A. Standard of Review*

The Court must uphold the ALJ's decision if substantial evidence supports her findings. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). "The substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120 (7th Cir. 2014). The ALJ is obliged to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore*, 743 F.3d at 1123. The ALJ,

however, need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

      *B. Substantial Evidence Supports the ALJ's Step-Three Determination*

Tigner first argues that the ALJ made an improper step-three determination because he ignored or rejected evidence proving Tigner is disabled. [Filing No. 29, at ECF p. 11.] Tigner contends that the ALJ should have considered her seizure log when determining if she met or equaled Listings 11.02 or 11.03, the listings for convulsive and nonconvulsive epilepsy.[1] [*Id.*]

Tigner must meet all criteria of the listing to be considered disabled. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The "degree of impairment will be determined according to type, frequency, duration, and sequelae of seizures." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Here, the ALJ determined that Tigner's seizures did not meet the frequency requirement of either listing. Tigner's seizures occurred at night and often went unwitnessed. [Filing No. 13-2, at ECF p. 20.] The only evidence showing that Tigner's seizures might be frequent enough is her self-reports and seizure log. The ALJ rejected this evidence because he found Tigner's testimony not credible due to inconsistency with the record. Tigner's statements about how often she had seizures and how often they were witnessed conflicts with statements given by her boyfriend and sister. [Filing No. 13-9, at ECF p. 106; Filing No. 13-8, at ECF p. 66.] Tigner's log is also inconsistent with the fact that she had a normal MRI and a normal EEG. [Filing No. 13-9, at ECF p. 84.] Also, Tigner's number of alleged seizures decreased after her medication was changed. [*Id.* at 67, 106.] The ALJ also considered Tigner's history of forgery and theft in

---

[1] Seizures for convulsive epilepsy must occur more than once a month despite at least 3 months of prescribed treatment and noncovulsive epilepsy must occur more than once weekly despite at least 3 months of prescribed treatment. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

his credibility determination. This evidence supports the ALJ's decision to give no weight to Tigner's seizure log, thus supporting his decision that she did not meet the listings.

Tigner also argues that the ALJ violated SSR 96-7p when determining that Tigner's leg swelling and subjective complaints of pain did not meet or medically equal a listing. SSR 96-7p states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." However, the ALJ's credibility determination must not be overturned unless it is patently wrong. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). Also, a case should not be remanded if the ALJ would reach the same result. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Here, the ALJ mentioned Tigner's failure to regularly wear her compression stockings in his credibility determination, noting Dr. Sklaroff's testimony that they would ameliorate her symptoms. The ALJ did not ask Tigner why she did not wear her compression stockings. Although SSR 96-7p may have obligated the ALJ to do so, the ALJ's credibility determination is not patently wrong because it is supported by substantial evidence.

The ALJ properly considered the medical evidence in his determination that Tigner's subjective complaints of pain and swelling were insufficient to meet or equal a listing. The ALJ considered Tigner's and her mother's testimony of her daily activities, which include cooking meals, doing housework, going shopping, tending to her own affairs, and attending school full time. [Filing No. 13-8, at ECF p. 23; Filing No. 13-6, at ECF p. 31.] The ALJ also considered medical evidence in the record that is contrary to her subjective complaints of pain. For

example, Tigner had a normal ultrasound of her leg and there was no evidence of peripheral artery insufficiency.  [Filing No. 13-9, at ECF p 25; Filing No. 13-8, at ECF p. 29.]  Both Dr. Nunez-Estrada and Dr. Saba indicated normal strength in her leg.  [Filing No. 13-9, at ECF p. 47-48, 60.]  Tigner also had a normal gait.  [Filing No. 13-8, at ECF p. 30; Filing No. 13-9, at ECF p. 106.]  The ALJ reasonably concluded these inconsistencies make Tigner's testimony less credible.  The ALJ properly considered credibility factors.  The ALJ's failure to ask Tigner why she didn't wear the stockings does not render his conclusion patently wrong.[2]  Even if the ALJ were to go back and ask Tigner about the stockings, she does not indicate what her answer would be or how this information might alter the ALJ's conclusion.  It is thus apparent that the ALJ would reach the same result on remand.  Therefore, the credibility determination should not be overturned.

Tigner also argues that the step-three determination is erroneous because the ALJ erroneously rejected the opinion of Dr. Dunaway, the agency medical examiner.  However, as a non-treating physician, Dr. Dunaway's opinion is not entitled to the same controlling weight as a treating physician.  20 C.F.R. § 404.1502; *Simila v. Astrue*, 573 F.3d 503, 514 (7th Cir. 2009).  When weighing the opinion of a non-treating physician, an ALJ determines the weight her opinion deserves by examining how well it is supported and by explaining whether it is consistent with the record.  *Id*. at 515

Here, the ALJ rejected Dr. Dunaway's opinion that Tigner is limited to a five-hour workday.  The ALJ explained that Dr. Dunaway's opinion is inconsistent with the findings of her own examination, noting that the exam was normal except for swelling in Tigner's leg.  The ALJ

---

[2] Tigner does not argue that she was not able to afford these stockings, nor is there any other suggestion in the record that Tigner's financial condition played any role in her failure to wear these stockings.

also explained that Dr. Dunaway's opinion was inconsistent with the agency consultative physician because he concluded she could work an eight-hour day.  The ALJ rejected Dr. Dunaway's opinion because it is inconsistent internally and with other evidence.  The ALJ supports this conclusion with an explanation based on the evidence in the record.  [Filing No. 13-2, at ECF p. 21.]  Therefore, the ALJ did not err by rejecting Dr. Dunaway's opinion.

### C.  The ALJ's Step-Five Determination was not Erroneous

Tigner also argues that the ALJ's finding that she can perform some jobs is erroneous because the ALJ did not consider restrictions from pain and swelling in Tigner's legs.  As a result, Tigner asserts that the hypotheticals given to the VE were based on an RFC that did not include all of Tigner's limitations.  However, the ALJ need only include limitations the he deems credible.  *Similia v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).  As just discussed, the ALJ properly rejected Dr. Dunaway's opinion because Tigner's leg pain and swelling were contradicted in the record.  The ALJ did not find Tigner's subjective complaints of pain and swelling credible due to inconsistencies with her daily activities and medical evidence.  [Filing No. 13-2, at ECF p. 20-21.]  The ALJ did not need to include limitations for leg pain and swelling in his hypotheticals because he found they were not credible limitations.  Thus, the ALJ's conclusion that there are jobs Tigner can perform is supported by the evidence.

### IV.  Conclusion

Tigner has not demonstrated that the ALJ committed reversible error.  The Court denies Tigner's brief in support of complaint [Filing No. 29] and affirms the Commissioner's decision.

Date: 8/9/2016

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

6

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov